**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JANICE H. ROBINSON, | CASE NO. 5:22-CV-01061-CEF |
| Plaintiff, | JUDGE CHARLES ESQUE FLEMING |
| | UNITED STATES DISTRICT JUDGE |
| v. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | JENNIFER DOWDELL |
| | ARMSTRONG |
| Defendant. | |
| | **REPORT AND RECOMMENDATION** |

## I.      INTRODUCTION

Plaintiff Janice H. Robinson ("Ms. Robinson") seeks judicial review of the final decision of the Commissioner of Social Security partially denying her applications for Social Security Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.      PROCEDURAL HISTORY

On January 7, 2016, Ms. Robinson filed her application for DIB and Supplemental Security Income ("SSI"), alleging an onset date of February 1, 2012. (Tr. 554, 561). Ms. Robinson listed "stroke" as the condition that limited her ability to work. (Tr. 653).

The Social Security Administration ("SSA") denied Ms. Robinson's applications initially and upon reconsideration. (Tr. 182-83, 212-13). Ms. Robinson requested a hearing

before an administrative law judge ("ALJ"). (Tr. 302). The ALJ held a hearing on April 19, 2018, at which Ms. Robinson was represented by counsel. (Tr. 112). Ms. Robinson testified, as did an impartial vocational expert ("VE").

On June 21, 2018, the ALJ issued a written decision, finding that Ms. Robinson was not disabled prior to January 7, 2016 but became disabled on that date and remained disabled through the date of the decision. (Tr. 214). Accordingly, the ALJ granted Ms. Robinson's application for SSI but denied her application for DIB. (Tr. 228). On April 5, 2019, the Appeals Council remanded the case back to the ALJ for further consideration of: (1) Ms. Robinson's mental impairments between the alleged onset date and her last insured date of September 30, 2013; and (2) whether the opinions of her treating physicians in March 2016 and April 2018 were supported for the period prior to September 30, 2013. (Tr. 238).

On September 10, 2019, the ALJ held a second hearing, at which Ms. Robinson was represented by counsel. (Tr. 104). Ms. Robinson did not appear. Her counsel informed the ALJ that Ms. Robinson had recently been hospitalized after suffering a stroke. (Tr. 107). Following the hearing, the ALJ issued a notice to show cause to Ms. Robinson in light of her failure to appear. (Tr. 421). On September 18, 2019, Ms. Robinson responded to the notice to show cause, stating that she was in acute rehab until September 13, 2019 and was unable to attend the hearing. (Tr. 467-73). On October 29, 2019, the ALJ held another hearing, at which Ms. Robinson was represented by counsel. (Tr. 98). Ms. Robinson again did not appear.

On January 30, 2020, the ALJ issued a written decision finding that Ms. Robinson was not disabled between her alleged onset date and September 30, 2013, her date late insured. (Tr. 244). On January 22, 2021, the Appeals Council issued an order remanding the case to the ALJ in light of additional evidence indicating that Ms. Robinson had posted

earnings in 2019 such that she had an additional insured period from October 1, 2019 through December 31, 2019. (Tr. 267-68). The Appeals Council ordered the ALJ to consider this additional insured period. (Tr. 268).

On May 13, 2021, a second ALJ held another hearing, at which Ms. Robinson was represented by counsel. (Tr. 64). Ms. Robinson testified, as did an independent medical expert and the VE. On June 25, 2021, the ALJ issued a written decision, which the ALJ amended on September 7, 2021. (Tr. 12, 38). The ALJ found that Ms. Robinson was not disabled prior to October 1, 2019, but that she became disabled on that date and remained disabled through the date of the ALJ's decision. (Tr. 24). The ALJ's decision became final on April 20, 2022, when the Appeals Council declined further review. (Tr. 1).

On June 17, 2022 Ms. Robinson filed her complaint, challenging the Commissioner's final decision. (ECF Doc. No. 1). Ms. Robinson asserts the following assignment of error:

(1)     Did the ALJ err at step two (2) and four (4) by failing to include Plaintiff's Depression and/or [anxiety] as a severe impairment and not assigning a relevant restriction in the final RFC?

(ECF Doc. 9, PageID # 4613).

### III.     BACKGROUND

####     A.     Personal, Educational, and Vocational Experience

Ms. Robinson was born in 1956 and was 55 on her alleged onset date. (Tr. 71, 554). She is divorced and has two adult children. (Tr. 72-73, 561). Ms. Robinson has a law degree and two master's degrees. (Tr. 71). She has prior work experience as a lawyer, a legal document reviewer, an employment counselor, and an administrator of social welfare. (Tr. 71-74).

3

**B.**     **Relevant Hearing Testimony**

*1.*     ***Ms. Robinson's Testimony***

Ms. Robinson testified that she has been living in a nursing home for two years following a stroke. (Tr. 71). Ms. Robinson testified that she had her first stroke in 2010, a second stroke in 2012, and a third stroke in 2017. (Tr. 75-76).

Ms. Robinson testified that she identified February 1, 2012 as the onset date for her disability because that was the date on which her doctor informed her that she was sick. (Tr. 74). Ms. Robinson testified that she was unable to work beginning in 2012 because of stress. (Tr. 75). Ms. Robinson testified that her doctor informed her that stress may have caused her strokes. (Tr. 76).

Ms. Robinson further testified that she was dealing with depression prior to her strokes, and that she has continued to have depression since her strokes. (Tr. 78-79). She testified that she has consistently taken medication prescribed by a specialist or her primary care physician for her depression from 2009 to the present. (Tr. 79).

*2.*     ***Vocational Expert's Testimony***

 The VE testified that Ms. Robinson's prior work could be classified as a utilization review coordinator, an employment counselor, and an administrator of social welfare. (Tr. 88-89). The ALJ then asked the VE to assume a hypothetical individual with Ms. Robinson's age, education, and prior work experience who would be limited to light work; could occasionally carry, push, and pull 20 pounds; frequently carry, push, and pull 10 pounds; stand for up to six hours per day; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally crawl; never work with unprotected heights or mechanical parts; and never operate motor vehicles. (Tr. 89-90). The VE testified that the hypothetical

individual could perform Ms. Robinson's past work. (Tr. 90).

The ALJ next asked whether the hypothetical individual could perform Ms. Robinson's past work if she were limited to simple, routine, and repetitive tasks; could not work at a production rate; could only occasionally interact with supervisors, coworkers, and the public; and could only tolerate a few changes in a work setting. (Tr. 91). The VE testified that the hypothetical individual could not perform Ms. Robinson's past work. *Id*. The ALJ further asked whether the hypothetical individual could perform Ms. Robinson's past work if the hypothetical individual were limited to simple, routine tasks without the other additional limitations. *Id*. The VE testified that the hypothetical individual could not perform Ms. Robinson's past work. *Id*.[1]

### C.   **Relevant Opinion Evidence**[2]

#### *1.   Sudhir Dubey, Psy.D.*

On March 9, 2016, Dr. Dubey completed a disability assessment report for Ms. Robinson in connection with her disability claim. (Tr. 824). Dr. Dubey noted that Ms. Robinson reported that she was being treated for depression and that her treatment began seven or eight years previously. (Tr. 825). Dr. Dubey diagnosed Ms. Robinson with depressive disorder, NOS. (Tr. 828). Dr. Dubey opined that Ms. Robinson's symptoms were stable and unlikely to change, and that her overall prognosis was also stable. (Tr. 827). Dr. Dubey also opined that Ms. Robinson would be able to understand, remember, and carry out multi-step instructions independently; would be able to maintain persistence and pace to

---

[1] An independent medical expert, Dr. Elizabeth Belanger, also testified at the hearing. However, Dr. Belanger testified that she was an internal medicine physician, and that mental health restrictions and other non-exertional restrictions associated with mental health issues were outside the scope of her practice such that she could not opine on those issues. (Tr. 86).

[2] While the ALJ determined that Ms. Robinson suffers from a number of severe impairments, Ms. Robinson challenges only the ALJ's treatment of her depression. Therefore, this Report and Recommendation does not discuss medical evidence relating to any other condition.

perform multi-step tasks; would have "some issues" dealing with co-workers and supervisors; and would have some issues dealing with work pressure. (Tr. 828-830).

The ALJ gave little weight to Dr. Dubey's opinion for the period through September 30, 2013 because Dr. Dubey performed his examination over two years after the end of that period and the opinion thus was of little value in assessing Ms. Robinson's functioning during the relevant period. (Tr. 21).

### 2. *Vu Tran, M.D.*

On May 12, 2016, Dr. Tran completed an evaluation of Ms. Robinson in connection with her disability claim. (Tr. 846). Dr. Tran opined that Ms. Robinson suffered from uncontrolled diabetes, depression, and neck pain secondary to probable degenerative disk disease with radiculopathy pain. (Tr. 848). Dr. Tran further opined that Ms. Robinson could work three to four hours per day in light of her diabetes and that she was restricted to light duty work due to her neck pain. (Tr. 849).

The ALJ afforded little weight to Dr. Tran's opinion because Dr. Tran examined Ms. Robinson over two years after the relevant period and treatment notes from the relevant period were relatively benign, with no indication of the substantial limitations that Dr. Tran described. (Tr. 22).

### 3. *K.H. Donahue, MS LSW*

On April 5, 2018, Ms. Donahue completed a residual functional capacity assessment of Ms. Robinson. (Tr. 1866). Ms. Donahue opined that Ms. Robinson displayed all the "Paragraph A" criteria for depressive disorder and had extreme or marked limitations in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (Tr. 1868). Ms. Donahue also opined

that Ms. Robinson had evidence of both: (1) medical treatment, mental health therapy, psychosocial support or a highly structured setting that was ongoing and diminished the symptoms and signs of her mental disorder; and (2) marginal adjustment to demands that were not already part of her daily life. *Id*. Ms. Donahue opined similarly with respect to Ms. Robinson's anxiety disorder. (Tr. 1869).

Ms. Donahue also opined that Ms. Robinson could handle few changes in her work environment; could handle simple, routine, and repetitive tasks; could not handle strict production quotas; required a low stress job with no work involving confrontation, arbitration and negotiation or strict time limits for completing tasks; could not be responsible for the health, safety, or welfare of others; could not supervise or manage others; and could not travel, drive, or deliver for work. (Tr. 1866). Ms. Donahue further opined that Ms. Robinson would be absent from work more than three times a month. (Tr. 1870). Finally, Ms. Donahue opined that the onset of Ms. Robinson's limitations was at least two years prior to the date of Ms. Donahue's assessment. *Id*.

The ALJ gave Ms. Donahue's opinion little weight because Ms. Donahue was not an acceptable medical source and did not treat Ms. Robinson during the relevant period, and because Ms. Robinson's medical records during the relevant period did not show any mental health symptoms. (Tr. 22).

### 4. *Carl Tishler, Ph.D. and Sandra Banks, Ph.D.*

On March 24, 2016, Dr. Tishler, a state agency medical examiner, opined that there was insufficient evidence from the alleged onset date through September 30, 2013 to assess Ms. Robinson's mental impairments. (Tr. 157). Dr. Tishler also opined that Ms. Robinson's impairments were not severe because they had no more than a minimal effect on her

functioning. *Id*.  On September 6, 2016, Dr. Banks, another state agency medical examiner, concurred with Dr. Tishler's opinions upon reconsideration. (Tr. 204-05). The ALJ rejected the opinions of Dr. Tishler and Dr. Banks, finding that the evidence in the medical record was adequate to assess Ms. Robinson's functioning during the period from her alleged onset date through September 30, 2013. (Tr. 22).

### D.     Relevant Medical Evidence[3]

On January 26, 2005, Ms. Robinson was admitted to the hospital, complaining of fatigue, weakness, decreased energy, blurred vision, and a near syncopal episode. (Tr. 1492). The treating physician determined that Ms. Robinson was exhibiting symptoms of stress and depression. *Id*. Ms. Robinson was discharged on January 30, 2005 and was prescribed Zoloft, among other medications. (Tr. 1493).

On November 16, 2009, Ms. Robinson went to the emergency room, complaining of feelings of hopelessness and visual hallucinations. (Tr. 1549). She endorsed multiple symptoms of depression, including insomnia, loss of interest, guilty feelings about being a bad person, lack of energy and concentration, and decreased appetite. *Id*. She also reported suicidal ideations. *Id*.

On November 17, 2009, Ms. Robinson was admitted to the hospital. (Tr. 1567). She indicated that her depression had been worsening over the past year. *Id*. Ms. Robinson also stated that she had experienced suicidal ideations the previous weekend and that she felt like she was currently in danger of hurting herself. *Id*. Ms. Robinson reported symptoms of anhedonia; decreased sleep, energy, and appetite; feelings of helplessness, hopelessness, and

---

[3] While Ms. Robinson alleges an onset date of February 12, 2012, she references evidence predating that date throughout her briefs. Accordingly, I will summarize that evidence here. Similarly, Ms. Robinson frequently cites to evidence postdating her date last insured, which I also summarize here to provide context for Ms. Robinson's arguments.

guilt; decreased attention and concentration; and suicidal ideation. (Tr. 1567-69). Treatment notes indicate that she had begun taking Prozac the prior week. (Tr. 1569). Ms. Robinson was tearful on examination. (Tr. 1573). She displayed suicidal ideation but no homicidal ideation, hallucinations, or paranoid thinking. *Id*. Her insight and judgment were poor, and distortions were present. *Id*. She was diagnosed with major depressive disorder, severe, recurrent with psychotic features. *Id*. Ms. Robinson was discharged on November 20, 2009. (Tr. 1578). Her discharge summary states that she improved across the course of her stay and was not suicidal, homicidal, or psychotic. (Tr. 1580).

Ms. Robinson received further treatment at Portage Path Behavioral Health for major depressive disorder and anxiety following her discharge. (Tr. 2492-2524). Treatment notes indicate that her treatment ended because she did not return for treatment. *Id*.

Ms. Robinson experienced strokes in July and October 2010. (Tr. 1888, 1945-46). Various treatment notes through 2011 continue to note that Ms. Robinson had been diagnosed with depression and anxiety and was taking medication. (Tr. 753, 769, 1731, 1755, 1758, 1762, 1766, 1769, 1771). Ms. Robinson's primary care physician also noted certain behavioral difficulties during examination, including a flat or intense affect, hostility, and agitation. (Tr. 1734, 1758-59, 1766-67, 1770).

There are no contemporaneous medical records indicating that Ms. Robinson was hospitalized or otherwise received treatment for depression or anxiety between Ms. Robinson's alleged onset date of February 1, 2012 and her date last insured of September 30, 2013. In March 2011, the records the parties have identified that are closest in time to Ms. Robinson's alleged onset date, she was alert and oriented to person, place, and time. (Tr. 770). She also displayed good concentration, normal mood and affect, and an intact memory. *Id*.

On October 4, 2013, shortly after Ms. Robinson's date last insured, she presented to the hospital with left shoulder pain. (Tr. 1604). Ms. Robinson was "well-appearing," and the treatment notes do not reflect any neurological complaints. (Tr. 1605).

Treatment notes from 2014 onward, after Ms. Robinson's date last insured, note that Ms. Robinson had been diagnosed with depression and anxiety and was taking medication and receiving treatment. (Tr. 875, 880, 889, 892, 895, 905, 940, 965-66, 1012, 1123, 1205, 1209-10, 2726, 2754, 2766, 3304).

## IV.     THE ALJ'S DECISION

The ALJ first determined that Ms. Robinson met the insured status requirements of the Social Security Act from her alleged onset date through September 30, 2013 and from October 1, 2019 through December 31, 2019. (Tr. 18). The ALJ also determined that Ms. Robinson had not engaged in substantial gainful activity during the periods of her insured status. *Id*.

The ALJ next determined that, from the alleged onset date through September 30, 2013, Ms. Robinson had the following severe impairments: status post cerebrovascular accident; late effects of cerebrovascular accident; obstructive sleep apnea; diabetes mellitus; mild aortic stenosis; degenerative disc disease of the cervical spine with left radiculopathy; and obesity. *Id*. The ALJ also determined that Ms. Robinson suffered from depression and anxiety from the alleged onset date through September 30, 2013. *Id*. The ALJ determined, however, that Ms. Robinson's depression and anxiety, whether considered singly or in combination, "did not cause more than minimal limitation in [her] ability to perform basic mental work activities and were therefore nonsevere." *Id*.

The ALJ further determined that Ms. Robinson had the following severe impairments

beginning on October 1, 2019: status post cerebrovascular accident; late effects of cerebrovascular accident; obstructive sleep apnea; diabetes mellitus; degenerative disc disease of the cervical spine with left radiculopathy; obesity; depression; and anxiety. *Id*.

The ALJ next determined that, through September 30, 2013, none of Ms. Robinson's impairments, whether considered singly or in combination, met or medically equaled the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 19). The ALJ also determined that, through September 30, 2013, Ms. Robinson had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except she could occasionally push, pull, and operate hand controls with the left upper extremity. She could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant could occasionally crawl. She could perform frequent overhead reaching with the left upper extremity. She had to avoid exposure to moving mechanical parts and unprotected heights. She could perform no commercial driving.

(Tr. 20).

The ALJ next determined that, through September 30, 2013, Ms. Robinson was capable of performing her past relevant work as a nonprofit manager and caseworker. (Tr. 23). Accordingly, the ALJ determined that Ms. Robinson was not disabled through September 30, 2013. (Tr. 24). The ALJ also determined, however, that, beginning on October 1, 2019, Ms. Robinson did satisfy the criteria of Listing 11.04 (vascular insult to the brain). (Tr. 23). Accordingly, the ALJ determined that Ms. Robinson was disabled beginning on October 1, 2019 and continued to be disabled through the date of the ALJ's decision. (Tr. 24).

## V.     LAW & ANALYSIS

### A.     <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the

council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough

evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B.    Standard for Disability

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e). "A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250. The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Golden*, 2018 WL 7079506 at *17. However, "[i]t is plaintiff's burden to prove the severity of her impairments, and to provide evidence establishing her RFC." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-1849, 2021 WL 4987607, at *3 (N.D. Ohio Oct. 27, 2021).

At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g) and 404.1560(c). *See Abbott*, 905 F.2d at 923.

C.   <u>**Analysis**</u>

Ms. Robinson argues that the ALJ committed reversible error at Step Two by failing to include her depression and anxiety as severe impairments and at Step Four by not including

14

restrictions based on her depression and anxiety in her RFC. For the reasons set forth below, I conclude that Ms. Robinson's arguments are without merit.

At Step Two of the sequential evaluation process, an ALJ must determine with a claimant's medically determinable impairment is a "severe" impairment.  *See* 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "Step two has been described as a '*de minimus* hurdle'; that is, 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)). However, when an ALJ finds both severe and non-severe impairments at Step Two and continues to evaluate non-severe impairments at Step Four, any error at Step Two is harmless. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

The ALJ found that Ms. Robinson's depression and anxiety were non-severe impairments because they "did not cause more than minimal limitation in [her] ability to perform basic mental work activities." (Tr. 18). In reaching that conclusion, the ALJ evaluated the "Paragraph B" criteria set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1, and concluded that Ms. Robinson did not have more than a "mild" limitation in any relevant functional area. (Tr. 18-19). The ALJ noted that there were no treatment records from the period between Ms. Robinson's onset date and her date late insured. (Tr. 19). The ALJ also noted that the most recent records predating Ms. Robinson's alleged onset date showed no cognitive or memory impairment, behavioral abnormalities, issues with memory or

concentration, or problems with adaptation or self-management. *Id*. Regardless, the ALJ stated that she considered Ms. Robinson's mental functioning and limitations in formulating the RFC at Step Four. (Tr. 19).

Ms. Robinson argues that the ALJ's treatment of her depression was erroneous because there is "substantial evidence in the record" to support her argument that her depression and anxiety constitute severe impairments. (ECF No. 9, PageID # 4617). As the Commissioner correctly notes, however, all the evidence that Ms. Robinson points to either substantially predates or substantially postdates the relevant period between her alleged onset date and her date last insured. Ms. Robinson notes, for example, that she "received intensive mental health treatment in November of 2009," more than two years before her alleged onset date. *Id*. at PageID # 4618. Ms. Robinson also argues that she was prescribed medication for her depression and anxiety between 2009 and 2013, and that she continued to take medication after her date last insured. However, she does not cite to any contemporaneous records reflecting that she was taking medication between February 2012 and September 2013.

"[T]o receive DIB benefits, a claimant must show that her disability started on or before her date last insured." *Jirousek v. Comm'r of Soc. Sec.*, No. 1:16-cv-01221, 2017 WL 1969463, at *17 (N.D. Ohio May 12, 2017) (citing 20 C.F.R. §§ 404.101(a); 404.131(a); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990)). Moreover, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). Thus, the mere fact that Ms. Robinson was diagnosed with depression prior to her onset date is not sufficient to establish that her depression was a severe impairment during the relevant period. Instead, Ms. Robinson must present evidence that her depression and anxiety actually limited her functioning

between February 1, 2012 and September 30, 2013. *See Dyson v. Comm'r of Soc. Sec.*, 786

F. App'x 586, 589 (6th Cir. 2019) ("Dyson's diagnosis with an ailment in (or before) 2005

does not mean that ailment impaired him between December 31, 2007 and March 21, 2008.").

      The ALJ found that there were no treatment notes dated between Ms. Robinson's

alleged onset date and her date last insured that demonstrated her depression and anxiety

placed limitations on her functioning. (Tr. 18). Ms. Robinson does not challenge that finding

here. "Generally, when a . . . claimant simply fail[s] to present any contemporaneous medical

evidence of disability from the relevant time period, the claimant cannot carry their burden

of proving their disability for the relevant period." *Griser v. Comm'r of Soc. Sec.*, 721 F.

App'x 473, 478 (6th Cir. 2018); *see also Dyson*, 786 F. App'x at 589 ("None of Dyson's

records shed light on his level of impairment during that relevant time. And the evidentiary

burden is Dyson's to carry.").

      It is true that evidence predating Ms. Robinson's onset date is not necessarily

irrelevant and may "when evaluated *in combination with later evidence* . . . help establish

disability," especially if the condition is progressive. *DeBoard v. Comm'r of Soc. Sec.*, 211

F. App'x 411, 414 (6th Cir. 2006). However, Ms. Robinson has not pointed to evidence

indicating that her depression and anxiety continued to impose substantial limitations on her

during the relevant period, and thus has not carried her burden of establishing that her

depression and anxiety constituted severe impairments. *See Kuczma v. Berryhill*, No.

1:16CV3072, 2017 WL 9672558, at *15 (N.D. Ohio Oct. 19, 2017), *report and

recommendation adopted*, 2018 WL 1357320 (holding that ALJ did not err in determining

that claimant's fibromyalgia was not a severe impairment where claimant did not "direct[]

this Court's attention to any medical evidence dating between his January 2008 onset date

and March 2011 [date last insured], much less evidence documenting significant limitations resulting from his fibromyalgia."); *Tollon v. Comm'r of Soc. Sec.*, No. 1:21-CV-1507, 2022 WL 2610518, at *12 (N.D. Ohio May 3, 2022), *report and recommendation adopted*, 2022 WL 2286214 (holding that any alleged Step Two error was harmless where plaintiff did not "identify evidence that her bunion surgery in 2018 caused her any issues; indeed, the only treatment note she cites in which she complained of foot pain is a record from January 2018, prior to her alleged onset date and her bunion surgery."); *Robinson v. Comm'r of Soc. Sec.*, No. 1:22-CV-0968, 2023 WL 2633535, at *6 (N.D. Ohio Mar. 24, 2023) (holding that an ALJ is "not even required to consider medical evidence predating the alleged onset date") (citing *Dyson*, 786 F. App'x at 588).

Similarly, while Ms. Robinson argues that she received treatment for depression and anxiety following her date last insured, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004); *see also Mayer v. Comm'r of Soc. Sec.*, No. 3:18CV2235, 2020 WL 415522, at *8 (N.D. Ohio Jan. 27, 2020) ("since this case is limited to DIB, evidence that post-dates the date last insured is not relevant, except to the extent that it bears on Plaintiff's functioning from the alleged onset date through the date last insured.")

Finally, while some of Ms. Robinson's treating physicians opined well after her date last insured that she had been disabled during the relevant period, courts have repeatedly affirmed an ALJ's decision to reject after-the-fact opinions that are unsupported by objective evidence from the relevant period. *See Strong*, 488 F. App'x at 845 ("Although Dr. Cornett opined long after the relevant period that Claimant had been disabled during the relevant period, such a retrospective and conclusory opinion is not entitled to significant weight

because it is not supported by relevant and objective evidence."); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (holding that ALJ properly discounted opinion of treating physician as speculative where treating physician had not seen claimant until two years after alleged onset date); *Gipson v. Comm'r of Soc. Sec.*, No. 5:16 CV 1108, 2017 WL 3732009, at *10 (N.D. Ohio Aug. 30, 2017) ("given the fact that Dr. Goswami's 2013 medical opinion post-dated Plaintiff's surgery by almost two years and lacks any support from relevant, objective evidence from the alleged onset date through the date last insured, the ALJ reasonably determined they had little probative value in determining Plaintiff's residual functional capacity from 2007 through 2011").

Ms. Robinson argues that reversal is warranted because this case is "identical" to *Richardson v. Saul*, 511 F. Supp. 3d 791 (E.D. Ky. 2021), where the court held that the ALJ erred by failing to incorporate the claimant's mental limitations in the RFC. In *Richardson*, however, there was contemporaneous evidence of the plaintiff's mental impairments, including a psychiatric analysis and the opinions of several physicians. *Id.* at 798-99. Ms. Robinson has not provided any similar evidence here. Ms. Robinson's citation to *Revello v. Commissioner of Social Security*, No. 5:20-CV-01860, 2021 WL 6064784 (N.D. Ohio Dec. 22, 2021) is similarly unavailing, as there was extensive evidence in that case regarding the plaintiff's bladder condition during the relevant period. *See id.* at *2-3.

The ALJ thus did not err at Step Two that Ms. Robinson's depression and anxiety were non-severe impairments and did not err at Step Four in formulating Ms. Robinson's RFC.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the ALJ's

decision.

Dated: May 10, 2023

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the

report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).